McKeesport Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued February 9, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

398

*Gary Gushard,* with him *Lewis J. Nescott,* for petitioner.

*Joan P. Feldman,* with her *Robert N. Hackett,* for respondent.

OPINION BY JUDGE WILKINSON, JR., March 27, 1979:

This is an appeal by the McKeesport Area School District (Petitioner) of a decision by the Pennsylvania Human Relations Commission (Commission) which found that Petitioner was in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955 (a). We affirm.

Petitioner asserts that there is not substantial evidence to support the sixty-eight findings of fact and the eleven conclusions of law which establish that the Petitioner maintained sex-segregated job classifications, denied equal overtime opportunities to females, and maintained wage differentials between males and females who performed work substantially equal in terms of skill, effort, responsibility and working conditions, resulting in lower wages and retirement benefits to females.

We, however, find the evidence overwhelmingly supports that conclusion and indeed, would find it difficult to understand how the Commission could have concluded otherwise based on the 1,713 pages of testimony and exhibits.

The discrimination alleged is in the janitorial staff of the McKeesport schools. A summary of the per-

tinent findings of fact is necessary for an understanding of the case:

Since July 9, 1969, the petitioner has maintained the following sex-segregated job classifications: the all-female position of cleaner previously called janitress; the all-female position of custodian in "one-woman" buildings; and the all-male positions of custodian in multi-custodian buildings, custodian in "one-man" buildings, building supervisor, supervisor in elementary schools, night supervisor, supervisor and first level supervisor.

The cleaners' wages are less than the custodians'. The following was the proposed collective bargaining agreement's wage schedule for the 1976 through 1979 school years. (Finding of fact number 29.)

*Basic 8-hour custodian:*

|          | 1       | 2       | 3       | 4        |
|----------|---------|---------|---------|----------|
| 1976-77  | $7,700  | $8,100  | $9,000  | $10,000  |
| 1977-78  | $8,000  | $8,400  | $9,300  | $10,300  |
| 1978-79  | $8,300  | $8,700  | $9,600  | $10,600  |

*Cleaners—4-12/3-11:*

|          | 1       | 2       | 3       | 4        |
|----------|---------|---------|---------|----------|
| 1976-77  | $5,775  | $6,275  | $7,075  | $ 7,900  |
| 1977-78  | $6,075  | $6,575  | $7,375  | $ 8,200  |
| 1978-79  | $6,375  | $6,875  | $7,675  | $ 8,500  |

The basic tasks of cleaners and custodians are described in findings of fact 31 and 33:

31. The primary function of cleaners a/k/a janitresses during the regular school year has at all times material hereto been to clean. They have assigned areas to do on a daily basis including: classrooms, activity rooms, offices, locker rooms, steps, and lavatories. Cleaners may clean from fifteen to twenty-six classrooms, in each of which they empty pencil sharpeners and wastebaskets, sweep the floor and move every desk to do so, clean dirty desks and chalk trays, wipe ledges, windowsills and

bookcases, scrape gum from the floor, wash window and door glass, and check to make sure windows are locked and lights shut off. In the lavatories cleaners empty wastepaper; service paper needs; wash and wipe sinks and fixtures, wash mirrors, sweep the floor, and shut off the lights. Cleaners also clean marks from the walls, clean water fountains; wash tables; sweep floors and collect rubbish in the cafeteria; dust handrails; and dust lockers. Some cleaners wet mop floors or scrub steps. Cleaners use cleaning equipment such as dust mops, wet and dry rags, dust pans and counter brushes. The general duties of cleaners are the same in all of the Respondent's school buildings where they are employed.

. . . .

33. During the regular school year the primary function of custodians in multi-custodian buildings has at all times material hereto been to clean. Custodians have assigned areas to do on a daily basis including classrooms, lavatories, offices, locker rooms, special activity rooms, cafeterias, and hallway and entrance areas. Custodians use a wet mop to mop floors; sweep steps, rooms, hallways and entrances; sweep and dust rooms; clean glass and windows; clean fixtures, mirrors and sinks in lavatories; service lavatory paper and soap needs; clean marks on walls and fixtures; sweep, mop and remove refuse in the cafeterias; clean offices; clean sinks and water fountains; clean up the building after special activities; lock and unlock doors; see that building is secure; make sure that lights are off and windows locked; shut off emergency power plant and circuits; change lights; and pick up garbage.

Another finding tells us that one woman applied for the position of custodian in a "one-man" building. She had seniority over the other bidders, but her application was not even acknowledged. A male with less seniority got the job. (Finding of fact number 17.)

Similarly in finding of fact number 19 we find that Emma Kissell bid on an opening for custodial supervisor in the White Oak building in June, 1974. She sent a letter to the Secretary/Business Manager, Robert Krasman, indicating her interest. She was the senior bidder on the job, but was not given the twenty-day period mandated by the collective bargaining agreement to demonstrate her competency in the position. The job was reclassified as a management level supervisory position, outside of the bargaining unit, after Ms. Kissell's bid. The position was re-posted and was filled by a male, Harry Whitehead, who was junior in seniority to Ms. Kissell, who had not applied when the job was originally advertised. The Pennsylvania Labor Relations Board ruled that the position should be put back into the bargaining unit, but the Respondent did not re-bid the job thereafter.

Overtime was distributed very unevenly. The total overtime figures in hours worked are as follows:

| Years | Cleaners | Custodians |
|-------|----------|------------|
| 1969 | — | 83.50 |
| 1970 | — | 157.25 |
| 1971 | 34.00 | 252.50 |
| 1972 | 56.00 | 542.00 |
| 1973 | — | 476.00 |
| 1974 | 132.50 | 927.75 |
| 1975 | 114.50 | 585.00 |
| | 337.00 | 3,024.00 |

(Finding of fact number 20.)

Cleaners were generally not given the opportunity to replace custodians. However the few times they did, they were paid overtime based on the cleaner's pay rate rather than the custodian's rate. Custodians, though, were paid overtime based on custodian's pay rate when they replaced cleaners, which was much more frequent than the reverse.

Petitioner argues that it is not in violation of Section 5(a) of the Act which says in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...

(a) For any employer because of the ... sex ... of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is best able and most competent to perform the services required.

Petitioner says this is so because the work of the custodians is substantially different than that of the cleaners. The testimony reveals that the work may differ occasionally; but, as can be seen by the findings of fact quoted above, not substantially. The Pennsylvania law in this regard is set forth at length by Justice POMEROY in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976) making it unnecessary for it to be repeated here.

There is clear and convincing evidence that Petitioner violated Section 5(a) of the Act in the hiring, promotion, training and wage rates for its janitorial staff; and it is our opinion that the Commission's decision in this case was a well founded one, based on

careful and thoughtful study of all the testimony and evidence.

Accordingly, we will enter the following

## ORDER

AND NOW, March 27, 1979, the final order of the Pennsylvania Human Relations Commission entered August 29, 1977, at docket number E-7100PD—E-7103PD, E-9516 and E-9417, E-9402P—E-9405P, E-9406P and E-9407P, and E-9447P is hereby affirmed.